IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                      No. 1:12-cv-01075-JDB-egb

TWO HUNDRED TWENTY-FIVE THOUSAND
THREE HUNDRED DOLLARS ($225,300.00) IN
U.S. FUNDS FROM FIRSTBANK (JACKSON,
TN) ACCOUNT #86476002 IN THE NAME OF
NORENE PUMPHREY,

    Defendant.

ORDER DENYING CLAIMANT'S MOTION TO DISMISS

This is a civil forfeiture proceeding instituted by the Plaintiff, United States of America, pursuant to 31 U.S.C. § 5317 against funds from a bank account alleged to contain deposits structured to avoid currency transaction reporting requirements in violation of 31 U.S.C. § 5324(a). Before the Court is Claimant, Norene Pumphrey's, motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). (Docket Entry ("D.E.") 15.) For the reasons set forth below, the motion is DENIED.

                                                  I.     FACTUAL BACKGROUND

From January 2008 through early 2012, Norene Pumphrey was employed as an Administrator at the Decatur County General Hospital. Her husband, Edward Pumphrey, is retired and receives income from a pension plan and an annuity. (Am. Compl. Ex. A ¶ 7, D.E. 4.) Bank records indicate that the Pumphreys have no outside employment or other legitimate source of income. (Id.) On October 1, 2008, Norene Pumphrey withdrew $180,322.00 from her

FirstBank Account #xxxx1123 generating a Currency Transaction Report ("CTR"). (Id. at ¶ 8.) That CTR indicates that Mrs. Pumphrey provided her driver's license at the time of the transaction to verify her identity. (Id.)

Beginning on January 8, 2008, Mrs. Pumphrey began to make a series of cash deposits into a personal savings account, FirstBank Account #xxxx2005. These transactions are as follows:

| DATE OF DEPOSIT | AMOUNT DEPOSITED |
|---|---|
| January 8, 2010 | $9,900.00 |
| January 13, 2010 | $9,800.00 |
| January 22, 2010 | $9,800.00 |
| January 28, 2010 | $9,800.00 |
| February 8, 2010 | $9,900.00 |
| June 15, 2010 | $9,800.00 |
| July 2, 2010 | $5,300.00 |
| July 12, 2010 | $9,900.00 |
| July 19, 2010 | $9,900.00 |
| July 27, 2010 | $9,800.00 |
| August 4, 2010 | $9,900.00 |
| August 12, 2010 | $9,500.00 |
| August 23, 2010 | $9,900.00 |
| August 30, 2010 | $9,800.00 |
| September 7, 2010 | $9,800.00 |
| September 13, 2010 | $9,500.00 |

| | |
|---|---|
| September 20, 2010 | $9,800.00 |
| September 28, 2010 | $9,900.00 |
| October 4, 2010 | $9,900.00 |
| October 12, 2010 | $9,900.00 |
| October 18, 2010 | $9,500.00 |
| October 25, 2010 | $9,900.00 |
| November 1, 2010 | $9,900.00 |
| November 8, 2010 | $4,200.00 |
| **TOTAL** | **$225,300.00** |

(Id. at ¶ 9.) On November 18, 2010, Mrs. Pumphrey withdrew $240,143.33 from FirstBank Account #xxxx2005 and closed it. (Id. at ¶ 10.) She then deposited these funds into FirstBank Account #86476002. (Id.) On October 21, 2011, United States Magistrate Judge Tu M. Pham issued a seizure warrant for FirstBank Account #86476002, and $225,300.00 was resultantly seized. (Id. at ¶ 21.) Shortly thereafter, Mrs. Pumphrey was interviewed by the Internal Revenue Service where she explained that she kept cash on hand in order to pay for her husband's medical expenses. (Id. at ¶ 22.) She would then deposit the money back into the bank as she determined that it was not needed. (Id.) Records, however, indicate that the Pumphreys had health insurance and that most out-of-pocket healthcare expenses were being paid by check from FirstBank Account #8633616. (Id. at ¶ 23.) On April 23, 2012, Mrs. Pumphrey filed a verified claim requesting the return of the money. (D.E. 14.)

## II.   STANDARD OF REVIEW

A.  Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

In Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the United States Supreme Court explained that analysis under Rule 12(b)(6) requires a two-pronged approach. First, the reviewing court should determine what allegations within the complaint can be classified as "legal conclusions" and disregard them for purposes of deciding the motion. Id. at 678, 129 S. Ct. at 1949. Second, the court should evaluate the remaining portions of the complaint — i.e. the well-pleaded facts — and ascertain whether it gives rise to a "plausible claim for relief." Id. at 679, 129 S. Ct. at 1950. At the second stage, the court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 93–94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (per curiam), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

4

improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556, 127 S. Ct. at 1965. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

   B.  Supplemental Rules E(2)(a) and G(2)(f)

In addition to the Federal Rules of Civil Procedure, complaints seeking forfeiture pursuant to 31 U.S.C. § 5317 are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Supplemental Rule E(2)(a) requires that the complaint articulate "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Additionally, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(2)(f); see also United States v. Mondragon, 313 F.3d 862, 865-66 (4th Cir. 2002) ("[T]he complaint must at bottom allege facts sufficient to support a reasonable belief that the property is subject to forfeiture.").

Under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), the Government must establish by a preponderance of the evidence that the property in question is subject to forfeiture. 18 U.S.C. § 983(c)(1). However, CAFRA also states that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). Other courts have interpreted this to mean that the "Government's forfeiture claim can advance forward in face of a 12(b)(6) motion to dismiss even if the Government's complaint does not provide all the facts that

would allow the Government to ultimately succeed in the forfeiture proceeding." United States v. 630 Ardmore Drive, City of Durham, Parkwood Tp., Durham County, N.C., 178 F.Supp.2d 572, 581 (M.D.N.C. 2001). Therefore, "the particularity requirements for a forfeiture complaint set out in Supplemental Rule E(2) must also be viewed in a more relaxed manner on a case by case basis, particularly in face of the savings clause reference to 'adequate evidence' in 18 U.S.C. § 983(a)(3)(D)." Id. at 581-82.

### III. LEGAL ANALYSIS

This civil forfeiture action brought under 31 U.S.C. § 5317 allows for the seizure and forfeiture to the federal government of "[a]ny property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy." 31 U.S.C. § 5317(c)(2). Sections 5313, 5316 and 5324 are provisions of the Bank Secrecy Act that impose reporting requirements on financial institutions for certain currency transactions. Section 5313 mandates that

> [w]hen a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . , in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.

31 U.S.C. § 5313(a). Under regulations promulgated by the Treasury Department, financial institutions must make a "report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000 . . . ." 31 C.F.R. § 1010.311;[1] United States v. Van Allen, 524 F.3d 814, 819 (7th Cir. 2008). This report, known as a Currency Transaction Report ("CTR"), is filed with the Internal Revenue Service.

---

[1] This section was formerly located at 31 C.F.R. § 103.22(b)(1).

The government contends that Claimant "structured" her currency transactions in amounts of $10,000 or less to avoid CTR filings. Section 5324(a)(3) makes it unlawful for a person to "structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions" for the purpose of evading § 5313's reporting requirement. Treasury Department regulations define structuring as follows:

> [A] person structures a transaction if that person . . . conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements . . . . "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 1010.100. To prove a violation of § 5324(a)(3), the government must present evidence of three elements:

> (1) the defendant must, in fact, have engaged in acts of structuring; (2) he must have done so with knowledge that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000; and (3) he must have acted with the intent to evade this reporting requirement.

United States v. Sutton, 387 F. App'x 595, 599 (6th Cir. 2010) (quoting United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005)); see also United States v. One Million Seven Hundred Thousand Dollars ($1,700,000.00) in U.S. Currency, 545 F. Supp. 2d 645, 651-52 (E.D. Mich. 2008) (applying these elements in a civil forfeiture action).

Here, Claimant contends that the Government has failed to plead specific facts reflecting the requisite intent to evade or violate 31 U.S.C. § 5313. Specifically, she argues that she had no knowledge of the Treasury Department's regulations and that the Government fails to present any facts alleging that her cash deposits were structured to avoid them. Accordingly, she asserts

that the complaint provides no evidence supporting elements (2) and (3) of the § 5324 analysis and, consequently, does not establish a reasonable belief that the property at issue is subject to forfeiture. This Court disagrees with Claimant's assertions, and finds that the Government has satisfied its pleading burden for the reasons set below.

First, the complaint is sufficiently specific to allow the claimant to answer with more than a general denial. It provides the precise "date and location of the seizure, the nature of the property seized, and the claimant's actions on the date of seizure." United States v. Funds in the Amount of $29,266.00, 96 F. Supp. 2d 806, 810 (N.D.Ill. 2001). This information is enough to allow the claimant to begin an investigation into the alleged facts and to frame a responsive pleading. Id. Mrs. Pumphrey argues that the Government provides only speculations and assumptions in averring that she had knowledge of the CTR requirements. While the Government does not allege direct facts to support its charge that she knew of the reporting regulations, it provides ample circumstantial evidence in support of this contention. In its complaint, the Government references twenty-four deposits over a period of eleven months into a single bank account, twenty-two of which were in sums ranging from $9,500 to $9,900. (Am. Compl. Ex. A ¶ 9.) Other courts have held that this alone is enough for a jury to infer that a party knew of the CTR requirements and was attempting to avoid them. See, e.g., MacPherson, 424 F.3d at 191 ("[T]he jury that convicted [defendant] could have reasonably inferred from the fact that the defendant chose to deposit a quarter-million dollars through a series of thirty-two small transactions all under $10,000 that he knew of the reporting requirements applicable to cash transactions over $10,000 and was intent on avoiding them."); United States v. Nersesian, 824 F.2d 1294, 1314-15 (2nd Cir. 1987) ("The jury could have inferred from the fact that [defendant] chose to carry out his currency exchanges in a series of small transactions over a number of days,

rather than in a single transaction or several larger transactions, that he knew of the reporting requirements and was attempting to avoid them.").

Additionally, the complaint makes specific reference to a prior CTR generating transaction made by the Claimant. (Am. Compl. Ex. A ¶ 8.) According to the Government's position, Mrs. Pumphrey provided her driver's license for identification purposes at the time the CTR was filled out. (Id.) The Government contends that these facts support the inference that the Claimant was present when the CTR was completed and through her presence, became aware of its requirements. (Id.) This Court agrees, noting that other courts have been willing to accept proof of prior transactions involving CTR filings as evidence that a person may have known of the filing requirements. See MacPherson, 424 F.3d at 190 ("[T]he jury could have reasonably inferred from the pattern of [defendant's] structuring, *as well as from the record of his earlier cash withdrawals that did generate CTR filings*, that [defendant] knew of and, in connection with the charged deposits, intended to evade currency reporting requirements.") (emphasis added); United States v. Ozbay, 2007 WL 656049, at *2. (N.D.N.Y. Feb. 27, 2007) ("Where there is evidence . . . of other transactions which generated CTR filings, it is permissible to infer that a person knows of and intends to evade currency reporting requirements.").

Accordingly, by pleading facts concerning the numerosity and amounts of the deposits made by the Claimant, coupled with the allegation of Claimant's prior transaction generating a CTR, the Government has met its pleading burden in accordance with Rule 12(b)(6) and Supplemental Rules E(2)(a) and G(2)(f). It has provided sufficient facts to support its position that the Claimant may have violated § 5324, thereby subjecting the funds to forfeiture under § 5317. Therefore, Claimant's motion to dismiss is not well taken.

IV. CONCLUSION

The Court finds that United States has satisfied the pleading requirements for this case. For the reasons discussed herein, Claimant's motion to dismiss (D.E. 15) is DENIED.

IT IS SO ORDERED this 27th day of September, 2012.

s/ J. DANIEL BREEN

UNITED STATES DISTRICT JUDGE